# AFFIDAVITS

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LESLYN BYRD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 2:05CV423-F** |
| | ) | |
| **BURKE'S' OUTLET STORES-ALA, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>AFFIDAVIT OF RENEE BRYANT</u>

STATE OF ALABAMA

COUNTY OF _____

BEFORE ME, the undersigned authority, personally appeared Renee Bryant, who being known to me and being first duly sworn states as follows:

1.    My name is Renee Bryant.  I am over the age of 18 and of sound mind.  I am presently employed with Burke's Outlet-ALA, Inc. ("Burke's") in Evergreen, Alabama as a Supervisor.  The information contained in this affidavit is based on my personal knowledge.

2.    Leslyn Byrd is married to my cousin.  Leslyn called me and asked that I come to work at Burke's.  Leslyn Byrd hired me to work at Burke's Outlet-ALA, Inc. in Andalusia, Alabama.

3.    I began working in the Andalusia Burke's store as a Cashier.  I began work on February 15, 2003.  I then was promoted to Supervisor and on September 26, 2003, I moved to the Evergreen store as a Supervisor.  I requested to move to the Evergreen Burke's store to get away from Leslyn and told Vickie Vaughn, the Group Manager, that this was the reason I wanted to transfer to Evergreen.

4.    I experienced the following problems with Leslyn as Store Manager:

- Leslyn would belittle me, especially in front of other employees and customers. For example, Leslyn once told me in stern voice that I had no place in retail, which was surprising based upon my eight years of experience in retail at that time.

- There were constant problems with employee scheduling. Leslyn would call me every other week and ask that I come in and work on my day off. These scheduling problems were usually due to "no show" employees. These scheduling problems existed even after I moved to the Evergreen store because Leslyn or Margaret Rountree would often call me and ask me to work some shifts at the Andalusia store.

- Leslyn would not give employees their requested days off which would often result in employees not showing up for work on those days. For example, I had requested some days off to go out of town; yet, knowing this, Leslyn scheduled me for one day in the middle of my requested time off. I then had to cut my vacation short to return to work. Leslyn insisted that I work that one day despite the fact that another employee had actually volunteered to take my shift.

- Leslyn would not come in to the store when a Supervisor "no showed". When I was an Empowered Associate at the Andalusia Burke's store, I closed the store a lot without Leslyn or a Supervisor.

- Schedules were made late, sometimes as late as Saturday for a schedule that begin the very next day, Sunday.

- Some employees felt they were shorted hours.

- Leslyn was very moody; she would carry grudges for small mistakes.

- Leslyn would yell at employees. I heard Leslyn yell at Angie Ammons and Amber Wingard through the office wall.

- Compared to the Evergreen Burke's store, the Andalusia Burke's store was junky, not organized.

- Overall, it was very stressful working at the Andalusia Burke's store under Leslyn's management and I found that management was much better at the Evergreen Burke's store.

5.    I signed the 2003 Letter to Vickie Vaughn, which is attached as Exhibit "A". The letter truly and accurately reflects the problems that we experienced with Leslyn at that time.

We sent this letter to Vickie because: (1) Donna Pressley had to go to the hospital for stress, which Donna attributed to her job, and then had to wear a heart monitor; (2) Angie Ammons' son was sick and Leslyn would not have the schedule timely posted so Angie had to keep changing her son's doctor appointments; and (3) three or four people had either quit or been fired.

6.     Donna Pressley typed the letter and handed the letter to the employees and the employees voluntarily signed. We gave Leslyn a copy of the letter before giving the letter to Ms. Vaughn. We later met with Ms. Vaughn and told her that we were tired of being belittled and had no incentive to do extras at the store.

7.     I was not surprised that Leslyn filed suit against Burke's because she is litigious but I was surprised that Leslyn alleged racial discrimination. Leslyn was certainly not fired based upon race but in my opinion, she was fired for poor management.

8.     To my knowledge, there is no racial discrimination at the Burke's Andalusia or Evergreen stores. Burke's enforces its anti-discrimination policy.

I solemnly swear and affirm that the contents of the foregoing affidavit are true and correct to the best my knowledge, information, and belief.

_____
Renee Bryant

SWORN TO and SUBSCRIBED before me this the 26 day of August, Sept 2005.

_____
Notary Public

My commission expires _____

LINDA T. HUGGINS
Notary Public, AL State at Large
My Comm. Expires Mar. 6, 2009

159524.1

3

Vickie,

We are here at this meeting for one specific reason. All of the employees at this Burke's outlet are concerned about the conditions we are working in. Retail is a very stressful job due to the constant stocking and flexing that must be done, as well as, the customer service we must provide. We as members of management have been working hard to keep the store going while our manager is helping to take care of other stores. We fully understand her job duties, but we don't understand why it takes her till Friday to make the next week's schedule and why she constantly says that we need to make appointments around the schedule. How can we make any arrangements for anything when we don't know when we have to work? We never know how to act or respond. No one wants to say anything because we all have either a family or rent and car payments. None of us are here because we have nothing better to do. We NEED our jobs. That's the reason we tolerate the constant nagging, changes in schedules, and the personality changes from our manager. The analogy has been used that the members of management are like the four tires on a car. When one has a problem or goes flat, so to speak, the car is unable to move. If it is not corrected it's worthless. I myself have seen her argue down customers that they were wrong, only to find out that they were correct and she was wrong. To me that's bad customer service and it did greatly embarrass me.

The last meeting was aimed at the personality differences between Leslyn and Angie. To tell you the truth, I myself had not been with the company long enough to know what everyone was like. After being with this company for almost six months, I have come to realize that there must be team work to be successful. Therefore all of the Supervisors have been working together helping with markdowns, and putting out each others stock. We also are trying to help each other with the mark out of stocks, damages, and keeping ALL the departments straight and orderly.

Now that we have managed to figure a way to work TOGETHER, we have our manager ( for lack of a better word ) freaking out over us using teamwork. She constantly nags and harasses the staff. She brings her outside problems to work and insists that Angie wants her job. She talks privately with us about everyone else's private issues trying to probe into why we do what we do. She has her good days and her bad. She tells us that this is OUR store but when we try to improve or flex our departments, she starts ranting about it being HER store and that SHE is the manager not us. None of that bothers us because we know she is. What bothers us is not knowing which personality we are coming to work with. The stress from working with her alone already has two supervisors on nerve and stress medication. There are too many good points to being with this company to just runaway from the problem. This seems to be the only way we can take a unified stand against the problem. No one has a problem with Leslyn as a person, but she could definitely benefit from hearing how we feel, or so we hope. Thank you for taking time out of your busy schedule to try and settle this matter. We appreciate it greatly. The employees of Andalusia, Burke's Outlet, #347.



EXHIBIT
A

**63**
**Burke's Outlet**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

LESLYN BYRD,                          )
                                      )
        Plaintiff,                    )
                                      )
vs.                                   )        CASE NO. 2:05CV423-F
                                      )
BURKE'S' OUTLET STORES-ALA,           )
INC.,                                 )
                                      )
        Defendant.                    )

## AFFIDAVIT OF RICHARD PICONE

STATE OF MISSISSIPPI

COUNTY OF HARRISON

BEFORE ME, the undersigned authority, personally appeared Richard Picone, who being known to me and being first duly sworn states as follows:

1.     My name is Richard Picone. I am over the age of 18 and of sound mind. I am currently employed as Director for Stores for Burke's Outlet-ALA, Inc. ("Burke's"). The information contained in this affidavit is based on my personal knowledge.

2.     As Director of Stores and previously as Regional Director for Stores, I supervised Leslyn Byrd, a Store Manager for Burke's Outlet in Andalusia, Alabama, from June 2003 up until her termination on July 22, 2004.

3.     Ms. Byrd's performance of her job duties with regard to operational standards, communication with the staff, and store morale in the Andalusia store was not satisfactory. Due to her unsatisfactory performance, I, as Regional Director, placed Ms. Byrd on the Burke's Performance Enhancement Plan ("PEP"). When Ms. Byrd was placed on PEP, she offered to

resign from Burke's but I encouraged her to stay with Burke's because I thought that she could succeed and improve her job performance.

4.      Burke's PEP is designed to identify employees whose job performance has been unsatisfactory and who fail to comply with Burke's policies, and assists those employees in improving their job performance.

5.      Burke's PEP for Ms. Byrd consisted of three performance reviews, which included discussions as to how Ms. Byrd could improve her job performance.    A true and correct copy of the PEPs for Ms. Byrd for April 30, 2004, June 7, 2004, and July 22, 2004 are attached to this affidavit as Exhibit "A," "B," and "C."

6.      At the first PEP review with Ms. Byrd on April 30, 2004, I along with Burke's District Manager, Margaret Rountree, informed Ms. Byrd that her performance needed to improve with regard to store operations and her communication with the Andalusia store employees.   As to operations, Ms. Byrd needed to get freight to the store floor, mark down merchandise, and post employee schedules in a more timely manner.  Also, Ms. Byrd needed to improve the appearance of and timely post the signs in the store and improve the appearance of the store (increase recovery of items).   As to her communication with the Andalusia store employees, Ms. Byrd needed to communicate better with her staff and improve her relationship with the staff, including increasing store morale.  The PEP then scheduled another PEP review of Ms. Byrd performance in 30 days.

7.      The second PEP review of Ms. Byrd dated June 7, 2004, reflects that Ms. Byrd 's job performance did improve with respect to operational standards.  As set forth in the PEP, Ms. Byrd "made some improvements" with regard to freight, markdowns, and signage.  However, the PEP also reflects that Ms. Byrd still needed to improve her performance with respect to store

2

appearance (recovery) and "[c]ommunications & store morale [were] still [an] issue," particularly the scheduling of employees for work. The PEP scheduled another PEP review in 30 days and concluded that "if objectives [for job performance improvement] are not met could lead to termination."

8.    At the third PEP review on July 22, 2004, I along with Margaret Rountree met with Ms. Byrd and determined that Ms. Byrd had not met the objectives set forth in the June 7, 2004 PEP and therefore should be terminated from Burke's. The July 22, 2004 PEP notes that store appearance (recovery) still needed improvement and that communication with store employees was "still a problem" with specific examples of the problems encountered. As reflected on the PEP, I along with Margaret Rountree concluded that Ms. Byrd would not improve her job performance with regard to communication with the employees or store morale and therefore, the PEP review of Ms. Byrd resulted in termination.

9.    Ms. Byrd never complained to me or even mentioned to me that she felt discriminated against based upon race or upon any other grounds.

10.    If Ms. Byrd had complained of race discrimination, her complaint would have been investigated and appropriate action would have been taken based on the results of the investigation. Burke's forbids racial discrimination and harassment, and maintains alternative means for employees to complain if they believe they are being discriminated against or harassed because of race. All complaints are investigated and dealt with in an effective and appropriate manner.

I solemnly swear and affirm that the contents of the foregoing affidavit are true and correct to the best my knowledge, information, and belief.

_____
Richard Picone


SWORN TO and SUBSCRIBED before me this the 27 day of July, 2006.

_____
Notary Public

My commission expires Jan 15. 2008

4

# Performance Enhancement Plan

**Review Date:** 4-30-04

To: _Leslyn Bryd_

**Position:** Manager 347

**Location #:** 347 Andulsia Al

From: _Margaret Printee_

**Follow up date:** June 2 2004
**Final Review date:** July 2 2004

**Introduction:**
State dates of any prior related verbal or written discussions on performance.
Verbal - Feb 27-04
March 29-04    revisit

**Issue Development:**
State reason for meeting.
Store not up to Burkes Operational Standards
Personal and Morale Problems

**Main Text:**
Attach a separate sheet, if necessary. Outline opportunities and goals not being met/describe the behavior to change and expectations/Outline how the individual can meet expectations.

1- Operational Standards - Freight - Maisdowns-
Damage Recovery, Manage Schedule

2- Communications + Store Morale - Scheduling

1- Adhere to all Burkes policies and standards

2- Better relationship with staff

**Closure:**
State date of follow-up meeting and possible course of action if objectives are not met.
30 days - June 2 - to review results
60 days - July 2

**Employee Signature** _Leslyn Byrd_    Date 4/30/04

**Manager Signature** _Margaret Printee_    Date 4/30/04

**Witness** _____    Date 4/30/04

Employee signature merely acknowledges receipt of a copy

092
Burke's Outlet

# Performance Enhancement Plan

To: *Leslyn Boyd*

From: *Margaret Rountree*

Review Date: *6 - 7 - 04*

Position: *Manager*

Location #: *347*

Follow up date: _____

Final Review date: *7- 7 -04*

## Introduction:
State dates of any prior related verbal or written discussions on performance.

## Issue Development:
State reason for meeting.

*Follow up of meeting on 4-30-04*

## Main Text:
Attach a separate sheet, if necessary. Outline opportunities and goals not being met/describe the behavior to change and expectations/Outline how the individual can meet expectations.

*Made some improvements in freight - M/O's + Signage.*
*Recovery needs to be improved - no managers request for time off.*

*Communications + store morale still issue as scheduling of employees -*

*Adhere to all Burkes Policies and Standards*
*Better working relationship with staff.*

## Closure:
State date of follow-up meeting and possible course of action if objectives are not met.

*30 days - July 7*
*If objectives are not met could lead to termination*

Employee
Signature *Leslyn Boyd*    Date *6/7/04*

Manager
Signature *M Rout*    Date *6/7/04*

Witness_____    Date_____

Employee signature merely acknowledges receipt of a copy

# Performance Enhancement Plan

To: *Leslyn Boyd*

Review Date: *7-22-04*

Position: *Manager*

Location #: *347*

Follow up date: _____

From: *Margaret Prentice*

Final Review date: _____

**Introduction:**
State dates of any prior related verbal or written discussions on performance.

_____

**Issue Development:**
State reason for meeting.

*Follow up meeting of 6-7-04*

**Main Text:**
Attach a separate sheet, if necessary. Outline opportunities and goals not being met/describe the behavior to change and expectations/Outline how the individual can meet expectations.

*See attachment.*

**Closure:**
State date of follow-up meeting and possible course of action if objectives are not met.

*terminated*

Employee
Signature _____ Date _____

Manager
Signature *M. Prentice* Date *7-22-04*

Dist

Witness _____ Date *7/22/04*

Employee signature merely acknowledges receipt of a copy

099
Burke's Outlet

Made improvements on freight,markdowns, signage and recovery
needs to be improved.

Communication: Still a problem.
    1- Associates calling Regional
       Twice since 6-7-04.
    2- Associates calling D.M.
    3- Statements written to D.M.
      A- Scheduling problems
      B- Being treated unfairly
      C- Reprimanded in office and sales floor
        in loud tone. Being called names {lier, evil }
      D- Having favorites giving more hours to new
        employees than others.
    4- Management schedule still problem. Changing
      schedule. Not letting D.M. know personally.
      With voice mail.

    5- Overall poor morale in store due to the above
      mentioned issues.


Ultimately the resopnsibility of the store Manger to
create a fair and good working environment. This has
not happened at store 347. Nor do we feel at this point
it will improve.

**100**
**Burke's Outlet**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **LESLYN BYRD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **CASE NO. 2:05CV423-F** |
| | ) |
| **BURKE'S' OUTLET STORES-ALA,** | ) |
| **INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## AFFIDAVIT OF MARGARET ROUNTREE

STATE OF ALABAMA

COUNTY OF _____

BEFORE ME, the undersigned authority, personally appeared Margaret Rountree, who being known to me and being first duly sworn states as follows:

1.    My name is Margaret Rountree.  I am over the age of 18 and of sound mind.  I am currently employed as District Manager for Burke's Outlet-ALA, Inc. ("Burke's").  The information contained in this affidavit is based on my personal knowledge.

2.    As District Manager and previously as Group Manager, I supervised Leslyn Byrd, a Store Manager for Burke's Outlet in Andalusia, Alabama, during the following periods: November 2000 – December 2001 and October 2003 – July 2004.  I experienced problems with Ms. Byrd's performance as Store Manager from the very beginning.

3.    During the period that I supervised Ms. Byrd, I experienced the following problems with Ms. Byrd's performance:

- Untimely bank deposits

- Scheduling problems – Employees complained to me that Ms. Byrd would constantly call them at home and ask them to work on their days off.

- Inadequate staffing - Ms. Byrd had an unusually high number of employee "no shows" which in turn often left the store with inadequate staffing (at least 2 people are required to be in the store at all times).

- Sloppy/Unorganized store appearance

- Harassment of one employee for taking leave under FMLA

- Long lunch breaks

- Ms. Byrd was late for inventory at her own store.

- Ms. Byrd did not get along with the employees – At least one employee requested to be transferred to another store due to Ms. Byrd's actions as Store Manager.

4.    Ms. Byrd never complained to me or even mentioned to me that she felt discriminated against based upon race or upon any other grounds.

I solemnly swear and affirm that the contents of the foregoing affidavit are true and correct to the best my knowledge, information, and belief.

Margaret Rountree

SWORN TO and SUBSCRIBED before me this the 12th day of September, 2005.

<table>
<tr><td>
CRISTY A. NASH<br>
Notary Public - State of Florida<br>
My Commission Expires Jun 17, 2008<br>
Commission # DD 374349<br>
Bonded By National Notary Assn.
</td></tr>
</table>

Cristy a. Nash
Notary Public

My commission expires Jun 17, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LESLYN BYRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:05CV423-F |
| | ) | |
| BURKE'S' OUTLET STORES-ALA, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | | |

## AFFIDAVIT OF LISA TWITTY

STATE OF ALABAMA

COUNTY OF _____

BEFORE ME, the undersigned authority, personally appeared Lisa Twitty, who being known to me and being first duly sworn states as follows:

1.    My name is Lisa Twitty. I am over the age of 18 and of sound mind. As of May 2005, I have worked with Burke's Outlet-ALA, Inc. ("Burke's") in Andalusia, Alabama for two years. I was hired as a temporary Associate/part-time Sales Associate. Eight months ago I became an Empowered Associate and two months ago, I was promoted to Supervisor. The information contained in this affidavit is based on my personal knowledge.

2.    Leslyn Byrd was my Store Manager up until the time that she was fired. I experienced the following problems with Ms. Byrd as Store Manager:

- Ms. Byrd would yell at me in her office for small things such as refusing to work on my day off.                    Overall, I was probably called to the office 7-8 times and yelled at by Ms. Byrd. Sometimes Ms. Byrd would ᴸᵀ yell at me about her frustration with the supervisors. That happen one time.

- On one occasion, Ms. Byrd yelled at me in her office because I refused to work on my day off. I left the store that day crying. I would have quit but it is hard to find another job in this town. I later told Margaret Rountree about

this incident and Ms. Rountree requested that I write the 2004 statement attached to this statement as Exhibit "A".    This statement truthfully and accurately reflects the events that occurred.

- Ms. Byrd was like two different people.  Some days Ms. Byrd was very nice and then other days she was awful.  Her moods were very unpredictable.  For example, Ms. Byrd offered to give me a ride home from work one day even though I already had a ride lined up. Ms. Byrd then complained the entire ride home, that she couldn't be giving me a ride home from work every day and in fact, I should probably apply for a job at Wal-Mart, which is by my house.

- There were problems with employee scheduling.  Ms. Byrd would call me three to four times a month to work on days off.  At least once a week. Ms Byrd would ask me to come in early or stay late.  I think she made these requests due to poor scheduling by her.

- Ms. Byrd did not get along with the employees.  More people, approximately 17 people, quit under Ms. Byrd as Store Manager.

- I saw Ms. Byrd reprimand Angie Ammons on the store floor in public during store hours.

3.    In my opinion, Ms. Byrd was a bad manager.  It was stressful working under Ms. Byrd. I have never been talked to in the rude way that Ms. Byrd talked to me.  Ms. Byrd was very intimidating.  Working at Burke's was much better after Ms. Byrd left.

4.    I am aware that Burke's prohibits discrimination of an employee based upon race and feel that Burke's enforces this prohibition.

I solemnly swear and affirm that the contents of the foregoing affidavit are true and correct to the best my knowledge, information, and belief.

_Lisa Twitty / Lisa Twitty_
LISA TWITTY

SWORN TO and SUBSCRIBED before me this the 2 6 day of Sept, 2005.

_Linda T Huggins_
Notary Public
My commission expires

LINDA T. HUGGINS
Notary Public, AL State at Large
My Comm. Expires Mar. 6, 2009

2004

①

To Whom This May Concern;

Thursday June 3rd about 5:00pm, Leslyn asked me if I would work on Friday June 4th. I told her I couldn't work that day, because I had already made plans.

About 10 minutes later, she told me she needed to see me in the office. I went back there and she started getting loud with me saying, she was tired of people saying they need hours, & when she wanted them to work they always had an excuse why they couldn't work, I interrupted her saying "wait a Minute," I am not about to get in trouble for not wanting to work on my day off", and then Leslyn starting saying I'm not saying your getting in trouble for that, but yet she kept bringing that up.

Then she starting saying that my Re-covery was slacking, and she felt that I was only comming to work to collect a paycheck. I told her no that was not true, Then she says, Lisa if you do not



EXHIBIT
A

094
Burke's Outlet



want to work here, then I can easily replace you, in a rude manor. Then I started explaining to her, that yes I do want my Job. I also said that I've been working a lot of Night Shifts, and most of them are from 5pm to 9pm, which is 4 hours, I said when I come in, I'll be scanning, dotting or stocking for the front end, and I lose track of time, and by time I realize what time it is, It's 8:00pm, and I have to take the trash, pull in all the racks, and clean dressing Rooms, and I make sure I pick up the clothes that are on the floor, and over the racks before it's time to go. She tells that 4 hours should be enough time. Memorial Day which was Monday, we closed at 7:00pm instead of 9:00pm, and we were really busy. She says the store was a mess. I felt it wasn't the cleanest, but it was



picked up, and the dressing rooms were cleaned out. I would say the 5 hours I was there, about 80% of the time I was ringing up customers. When the store closed, the supervisor was ready to go, and I have no controll over when they are ready. They have the keys, and the code I don't. She told me I was wrote up. She gave me no warnings about my job duties. She just wrote me up. I asked the supervisor that I closed with memorial day if she got wrote up, and she told me that Leslyn said she would let it slide. I feel that this is unfair, and it makes me upset. When I left her office, I was in tears, and I felt I needed to take this to higher management. This is not the first time she has been this way towards me. I just feel that enough is enough. I like working for Burkes, and I

④

feel I would enjoy my job alot better, if she would ease up on me. I've worked retail since I was 17 yrs old, and I've never had a manager treat me that way. I want to add one more thing that goes on, I feel that when I come in to Close 9 times out of 10 the dressing rooms have not been checked, and the rack by the dressing room has alot of clothes on it, and I also have put Go Backs from refunds from earlier that day. So I feel like I doing a whole days worth, when I come in, and thats why I think ~~that~~ she says my recovery is not done. I don't want nothing bad to come of this, but I just would like to be treated a little better.

Sincerely

#347    Lisa Tuttle